(63 App. Div. 1.)

## FULLERTON v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. STREET RAILWAYS—OPERATION OF CAR—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

Defendant's car was running fast, and the motorman, when .he was within 125 feet of a child which was approaching the track, heard a woman scream in the second story, and looked in that direction, and then looked back into the car, and did not discover the child until close upon it. *Held*, that the evidence was sufficient to support a finding that the motorman was negligent.

2. SAME—REQUESTED INSTRUCTION.

Where the substance of a requested instruction, in so far as it was applicable to the evidence, was fully submitted in the general charge, it was not error to refuse the requested instruction.

3. SAME—SPEED OF CAR—PROOF.

Where there was no evidence of what was the ordinary speed of electric cars in the streets of the city, an instruction that if defendant's car was being managed with ordinary care, and was running at the ordinary speed of electric cars lawfully authorized to be operated on the streets of the city, plaintiff could not recover, was properly refused.

4. SAME—EVIDENCE—ADMISSIBILITY.

Where a small child was injured by a street car in front of the premises where it lived, evidence that the child's mother was in poor health and that its father was dead was properly admitted, as bearing on the question of the contributory negligence of the parents in allowing the child on the street.

5. DAMAGES—PERSONAL INJURIES.

Where the injuries sustained by a small child necessitated the amputation of one limb, and two toes from the other, a verdict of $3,401.20 was not excessive.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by John Fullerton, an infant, by Phœbe Ann Fullerton, his guardian ad litem, against the Metropolitan Street-Railway Company. From a judgment in favor of plaintiff for $3,401.20, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
Edward A. Sumner, for respondent.

PATTERSON, J. This is an action to recover damages for personal injuries sustained by an infant non sui juris, through the alleged negligence of the defendant's servant, under the following circumstances: On the 3d of August, 1897, the child strayed from the apartment in a tenement house in which he lived with his mother, at the southeast corner of East 116th street and Park avenue, in the city of New York. Before leaving the house, he had been playing in a room in which his mother had left him, the door of which room was closed with a catch lock, but in some undisclosed way it was opened so that the child wandered from the room into the street. While playing with some other children, he attempted to cross East 116th street, opposite the house No. 122, a distance

some 300 feet east of Park avenue. While upon the southerly track the child was struck by one of the defendant's cars, and received injuries which necessitated an amputation of one of his legs and two toes of the remaining foot. In front of the premises No. 122 East 116th street, when the boy left the sidewalk, there was standing an ash cart, a little to the east of the point at which the boy left the sidewalk. The car which struck him had come down Park avenue, and turned the corner into 116th street. As it came along the street, two of the witnesses testified, it was proceeding at a very rapid rate of speed; one of them fixing it at 18 miles an hour; another, at about 9 miles. Testimony on behalf of the plaintiff locates the car from 100 to 125 feet distant from the boy when he was first observed upon the track. The defendant's theory, testified to by the motorman, is that the plaintiff was not seen until the car was within about 6 feet of him; and the suggestion is that the position of the ash cart was such that the motorman could not see the boy as he was leaving the curb. There was evidence to support the claim of negligence of the motorman. One of the witnesses for the plaintiff testified that the car was proceeding at a very rapid rate, and was at the distance of from 100 to 125 feet from the boy when a woman in the second story of the house No. 122, seeing the child was in danger, screamed. Thereupon, according to the testimony of this witness, the motorman slackened the speed of the car, and looked up to the window of the house No. 122, where the woman was standing; and then some one inside the car screamed, and the motorman looked back into the car, and, as he did so, let go the brake, and the car moved rapidly ahead again. Then the motorman, apparently seeing the child, put on the brake, and stopped the car after it had run over the child. The negligence attributed to the motorman is apparent, if the jury believed the testimony of the plaintiff's witnesses, which they evidently did. Had the motorman been attentive and looked before him, according to the plaintiff's theory, which the jury have adopted, he could not have failed to see the boy; and his carelessness while running the car through the street at such a high rate of speed, even if it were limited to 9 miles, was sufficient to authorize the jury to find for the plaintiff on the issue of negligence of the defendant. There was a sharp conflict on that issue, but the whole testimony was submitted to the jury in a very clear, fair, and instructive charge of the learned judge who presided at the trial. That charge has been the subject of some criticism by the appellant, who argues that while "it is an excellent review of the testimony, and a clear statement of the questions to be decided by the jury, yet it is defective in that nowhere did the learned judge instruct the jury as to the legal effect of their conclusion upon the facts." There is no exception taken in the record to the failure of the judge to state to the jury the legal effect of the facts as they might find them. The issues presented, and the obligation of the plaintiff to sustain the burden of proof upon those issues, and a review of the testimony bearing upon them, were very plainly stated to the jury, who certainly knew what was before them for determination,

and what the necessary legal result of their conclusion upon the evidence must be. But the criticism referred to is made to give enforcement to the contention that the learned judge should have charged a request for an instruction to the jury in the following words:

"If the jury find from all the evidence in this case that the defendant's car was being managed with ordinary care, and was run at the ordinary speed of electric cars lawfully authorized to be operated in the streets of this city, and that the approach of the plaintiff towards the track was not observed by the motorman in consequence of the presence of the ash cart on the right-hand side of the street, then the plaintiff cannot recover, and the defendant is entitled to a verdict."

In answer to this request, the court said, "I decline to charge other than I have already charged."

The appellant insists that it was entitled to this specific instruction. Upon a careful consideration of the main charge, and of the disposition made by the learned judge of other requests for instructions made by the appellant, we think no error was committed to the prejudice of the appellant by the refusal of the court to give the specific instruction now under consideration. It might be sufficient to say that it was properly refused because it embraced in combination various propositions, and that one of them had no foundation in the proof. There was no evidence to show what is "the ordinary speed of electric cars lawfully authorized to be operated in the streets of this city," and the trial judge might very well have declined to consider the request upon that ground. But, passing that, as perhaps being altogether technical, we find that the court instructed the jury as follows:

"The duty of the motorman was to manage his car in a reasonably prudent and careful manner, having in view all the conditions which surrounded him at the particular place where he was. It was his duty to keep his car under reasonable control, so that he could manage it with sufficient promptness to stop it promptly if occasion arose to do so. And, while there must be conceded to vehicles of this kind a right to run at a considerable rate of speed, yet that rate of speed must in all cases be such as is reasonable and safe in view of the correlative rights of persons upon the streets. As I have already said, the rate of speed then becomes an important factor in this case; and it is for you to determine what that speed was, and whether or no the motorman, in view of all the surrounding circumstances, acted as a prudent and careful person in permitting his car to attain that rate of speed."

That was a correct statement of the law applicable to the case, and was equivalent to that much of the request under consideration as related to evidence that the defendant's car was being managed with ordinary care. But the court, at the request of the defendant, also charged the jury as follows:

"If the jury find from the evidence in this case that the motorman in charge of the defendant's car, as soon as he saw or ought to have seen the peril of the child, applied the brake and used his best efforts to stop the car, and that said car was stopped as soon as the same could have been done by the exercise of ordinary care under the circumstances of the case, and having reference to the descending grade on which the car was running, then the plaintiff cannot recover, and the defendant is entitled to a verdict."

Here, again, is an instruction which, from the condition of the record, we must assume was given to the jury (for there is no ex-

ccption to its not being charged, and no claim has been made before us that it was not charged), which stated a proper rule as to the duty of the motorman. The term of the request which refers to the ash cart is fairly included in that portion of the main charge which refers to the testimony of the man in charge of the cart, to the effect that the boy ran out from behind the cart, and just as he got to the edge of the rail the car came down and struck him. Thus the spirit and substance of the refused request were put before the jury, and the trial justice was not bound to accept a formulation of a charge from the defendant's counsel, provided he laid before the jury, as he did, a proper rule of law, including, in substance, those elements which were contained in the refused request.

It is urged by the appellant that the court erred in allowing testimony that the plaintiff's father was dead, and that his mother was in a poor condition of health. It is suggested that that testimony was offered and had the tendency to excite the sympathies of the jury, as in the case of Lipp v. Otis Bros. & Co, 161 N. Y. 559, 56 N. E. 79. But the testimony was legitimate, and was properly received, as bearing upon the subject of the contributory negligence of the parents of the child. He being non sui juris, and not responsible for negligence, it was necessary for the plaintiff to show that his parents had not been remiss in their care of the child. The duty of looking after the child would have been incumbent, not upon one parent, but upon both. It was therefore proper to show that the father was dead, and it was also permissible to show that the mother was in such a condition of health that she could not bestow upon the child more care than she did exercise when she left him, as she supposed, in a secure position in one of the rooms of her apartment. All this testimony was directed to relieving the parents of the child from the imputation of negligence on their part, and the case is therefore unlike that of Lipp v. Otis Bros. & Co., supra, where the only possible object of such testimony as is there considered was, as pointed out in the opinion of the court of appeals, to excite the sympathy of a jury because of the poverty of those dependent for support upon the person whose death was the subject of the inquiry in that action.

The case before us requires no further consideration upon any of the exceptions presented, and, in view of the grave injuries this child has sustained, we cannot say that the damages awarded by the jury are excessive.

The judgment and order appealed from should be affirmed, with costs.

O'BRIEN and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., dissents.

INGRAHAM, J. I dissent. The negligence of the defendant seems to be predicated chiefly upon the speed at which the car was running at the time of the accident. The testimony of the witnesses for the plaintiff as to the speed of the car varied considerably; one testifying that its speed was 18 miles an hour, while an-

other said it was going very fast,—about 9 miles an hour; the case showing the usual confusion which obtains when witnesses undertake to fix the speed of a moving vehicle in the street. Upon this testimony the question as to the speed of the car was a fact for the jury, and I think the defendant was entitled to have the jury instructed, as requested by its counsel, that if they should find from all the evidence that the defendant's car was being managed with ordinary care, and was run at the ordinary speed of electric cars lawfully authorized to be operated in the streets of the city, and that the approach of the plaintiff upon the track was not observed by the motorman in consequence of the presence of the ash cart on the right-hand side of the street, then the plaintiff cannot recover. The phrase, "run at the ordinary rate of speed of electric cars lawfully authorized to be operated in the streets of the city," clearly means the ordinary speed at which it was prudent to operate such a car in this locality. It is sought in the prevailing opinion, by adding together detached portions of the charge with other requests of the defendant which were charged, to show that this request was substantially complied with. But I think in this case the defendant was entitled to have presented to the jury the concrete statement of the conditions which would require them to find a verdict in its favor, and the refusal to charge this specific request was, I think, reversible error.